IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DOMINIC ALLEN KING,

               Plaintiff,

v.

TAMMY MAASSEN, NURSE P.
HULSTEIN and KRISTINE PRALLE,

               Defendants.

OPINION AND ORDER

19-cv-382-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Pro se plaintiff Dominic King is proceeding on claims that defendants Tammy Maassen, Pauline Hulstein and Kristine Pralle violated his rights under the Eighth Amendment and state law by failing to take reasonable measures to treat his hemorrhoids. For the reasons below, I conclude that plaintiff has not submitted sufficient evidence to show that any of the defendants acted with deliberate indifference to his medical needs. Therefore, I am granting defendants' motion for summary judgment with respect to plaintiff's Eighth Amendment claims.  I decline to exercise supplemental jurisdiction over plaintiff's negligence claims, which I will dismiss without prejudice so that plaintiff can refile them in state court if he chooses to do so.

       From defendants' proposed findings of fact and the evidence in the record, I find the following facts to be material and undisputed unless otherwise noted.

1

UNDISPUTED FACTS

A. The Parties

Plaintiff Dominic King has been incarcerated at the Jackson Correctional Institution, where defendants were all employed during the events at issue in this lawsuit. Tammy Maassen is a registered nurse and the health services manager, Pauline Hulstein was a nurse clinician 2 at Jackson from April 2, 2018 to May 2020 and Kristine Pralle is a nurse clinician 4.

Maassen's position of health services manager is administrative in nature; she does not evaluate, diagnose, treat or prescribe medications for inmates and does not make referrals or approve treatment recommendations from offsite providers. Rather, medical care is provided by the nursing staff and advanced care providers. Nursing staff are responsible for triaging, that is, assigning degrees of urgency to patients with medical problems and responding accordingly, as well as responding to health service requests, which are written communications between the health services unit and an inmate.

B. Health Service Request Procedure

When an inmate has a non-urgent or non-emergency medical problem and wants to be seen, the inmate completes a health service request. All health service requests are kept and placed in an inmate's medical record. Health service requests are first triaged by nursing staff, even when addressed to a specific staff member. This is because a health service request may contain urgent needs that cannot wait until select staff are working in the unit or available to review requests. Nursing staff work to triage all heath service requests within

24 hours of receipt.  They use their discretion and experience when triaging health service requests, as such requests contain a variety of requests or information.

The response a health service request receives depends on the circumstances, including the content and context of the information conveyed in the request.  Sometimes the content of the health service request will require a face-to-face sick call with a nurse or an appointment with an advanced care provider, while at other times the content of the health service request will require no more than a simple answer to a question.  Nurses must use their discretion when making initial recommendations for how quickly an inmate should be seen by a nurse or advanced care provider, but nurses have no control over an advanced care provider's schedule, and a nurse's appointment recommendation may be adjusted to accommodate other, more urgent needs or the advanced care provider's schedule.

A health service request is not the appropriate method for communicating a medical emergency.  Instead, an inmate is to immediately notify unit security staff, so the security staff can contact the health service unit quickly.  Depending on the information relayed, the health service staff sees the inmate as soon as possible, either by responding to the unit to assess the inmate or by bringing the inmate to the health service unit.  A registered nurse and an advanced care provider are always on call after hours.

Nursing staff sometimes forward a health service request to the health services manager, Maassen, for a response or to inform her of the response the nurses have given.  Maassen does not see all health service requests.  Whether a health service request is

forwarded to Maassen depends on the circumstances of the request.  None of plaintiff's health service requests were forwarded to Maassen, so she did not respond to any of them.

### C.  Provision of Health Care at Jackson

In most cases, nursing staff conduct the initial assessment of an inmate to determine whether the inmate should be seen by an advanced care provider.  Nursing staff have nursing protocols they follow as a guide for the appointment and any treatment.  For pain, nurses may suggest treatment interventions such as ice therapy, activity restriction, extra pillow, ace wrap, non-prescription medications (i.e., ibuprofen and Tylenol), muscle rub and education on PRICE measures (protect, rest, ice, compression and elevation).

Like Maassen, the nursing staff do not proscribe medication, make off-site referrals or approve treatment recommendations from offsite providers.  Advanced care providers are responsible for final treatment decisions and care plans.  They are also responsible for writing prescriptions, making offsite referrals and approving the treatment recommendations of an offsite provider.  The nursing staff and Maassen defer to medical decisions made by advanced care providers.  They do not have the authority to override or alter a medical decision made by an advanced care provider.

Nurses may make an initial appointment with an advanced care provider for an inmate, but the nurses have no control over an advanced care provider's schedule, and an initial appointment can be moved for a variety of reasons, such as more urgent medical needs or the provider's availability.  Nurses may also ask a medical assistant to schedule an inmate

4

with a medical provider because medical assistants work directly with providers and are familiar with their schedules.

Corrections often works with outside providers to help with medical diagnoses, care and treatment plans for inmates. Only an advanced care provider may make a referral to an outside provider. When an advanced care provider makes a referral to an outside provider, the medical program assistant associate arranges the appointment with the offsite facility or specialty department. Scheduling an appointment with an offsite provider can take time because appointments are scheduled at the outside provider's discretion and availability. Maassen, Hulstein and Pralle do not schedule appointments with outside providers.

Inmates are not informed of the date of their offsite appointments because of security risks. Anytime an inmate is taken offsite, Corrections has a duty to keep the inmate, the Jackson staff and the community safe. Trips outside Jackson are risky because the inmate may escape or attempt to escape or the inmate's family or friends may try to meet up with the inmate. In addition, Jackson must protect an inmate from a victim or a victim's family, as those individuals may want to harm the inmate.

In February 2018, the health services unit at Jackson Correctional Institution received a new, full-time agency advanced care provider. It often takes a new provider time to acclimate to the institution and carry a full patient load. Jackson also had two other advanced care providers who worked reduced schedules.

D.  Plaintiff's Treatment

1.  Initial encounters with non-defendants in health services unit:  February 2018

On February 4, 2018, plaintiff saw Nurse Matt Golat (not a defendant) for rectal pain following a bowel movement and a history of hemorrhoids.  The nurse noted an external mass, gave plaintiff hemorrhoid cream and a stool softener and told plaintiff to follow up with an advanced care provider as needed.

Hemorrhoids are swollen veins in the anus and lower rectum that can develop inside the rectum (internal hemorrhoids) or under the skin around the anus (external hemorrhoids). According to Maassen, it is a fairly common condition and inmate complaint.  Hemorrhoids are not considered life-threatening but can cause pain or discomfort, itching or irritation in the anal region, swelling around the anus and bleeding.  If blood pools in an external hemorrhoid and forms a clot, it can cause more severe pain, swelling, inflammation and a hard lump near the anus.  If this occurs, the hemorrhoid is described as "thrombosed."  Stool softeners can help prevent an inmate from straining during a bowel movement.  Ointments, creams and preparations (or pads) can help ease pain or itching associated with the hemorrhoid.  Pain medications like tylenol or ibuprofen are not typically offered to treat hemorrhoids, but those medications are available to buy from the canteen.  If someone is bleeding, ibuprofen can cause further bleeding because it thins the blood.

On February 6, 2018, the health services unit received a health service request from plaintiff, who wrote:

> I was seen by the HSU on 2/4/18 and my conditions are getting even worse.
> I was given cream and laxatives but nothing for pain.  I'm in a lot of pain and

can hardly even sit down.  I am unable to push the hemorrhoids back in.
Need to see Doctor.

A nurse responded the same day, checking the boxes marked "Scheduled to be see in HSU" and "Treated Today."

The same day, plaintiff saw a nurse, who noted that plaintiff had tried hemorrhoid cream and a laxative without relief.  Plaintiff self-reported his pain between a five to six on a ten-point scale.  The nurse noted an external mass but reported no active bleeding near plaintiff's rectal area.  The nurse also wrote: "Rectal mass seems smaller but one appears to be darker ([right] upper Rectal)."  The nurse gave plaintiff hemorrhoid pads to use as needed and provided education about fluids, bowel movements and hemorrhoids.  In addition, the nurse made a follow up appointment with an advanced care provider.  The nurse checked the box "Within 7 days," indicating that plaintiff should be scheduled to see an advanced care provider within seven days.

Two days later, on February 8, 2018, Medical Assistant Amanda Ladwig took plaintiff's vitals and Nurse Practitioner Debra Tidquist evaluated him.  Tidquist noted that plaintiff had three hemorrhoids and recommended a followup in one week.  (Plaintiff does not dispute that this visit took place or that a followup was recommended.  Dkt. #36 at 3. However, defendants also cite Tidquist's progress note in which she wrote "3 external hemorr[h]oids noted nonthrombosed, small sized."  Dkt. #29-1 at 27.  As plaintiff points out, that progress note is dated February 8, 2016, not 2018.  Id.  In reply, defendants submitted a "corrected February 2, 2018 medical progress note" on which an unidentified person appears to have written over the number six with a number eight.  Dkt. #41.

7

However, because defendants offer no explanation for the correction, including who made it or why it was made, I have not considered the additional contents of this record that defendants seek to propose as fact.)

The health services unit did not hear anything further from plaintiff until he submitted health service requests in October 2018.

2. Defendant Hulstein's treatment of plaintiff:  October 2018

Defendant Hulstein triaged health service requests that plaintiff submitted on October 7, 9, and 28, 2018.  She did not have any previous knowledge of his hemorrhoid issue.

In his October 7, 2018 health service request, plaintiff wrote that "[s]everal months ago you guys seen me on my hemorr[h]oids.  It is still sticking out of my body and bleeding every time I go to the bathroom!!  I want this removed by surgery or by freezing it so it falls off!!  One or the other has to happen!!!  I should not have to go through this pain and suffering."  Hulstein responded the same day, writing "scheduled with Nursing."  On October 8, Hulstein met with plaintiff, who reported having pain only when cleaning himself after a bowel movement.  Hulstein did not record anything further on the electronic medical record, but the parties agree that she requested an appointment with an advanced care provider.  (Hulstein says that she must have made a mistake in using the system and that is why the information is missing from plaintiff's record.)

8

On October 9, 2018, plaintiff submitted another health service request, writing that "I saw a nurse yesterday that confirmed I have a large hemmeroid sticking out of my body and its been like this for months and I am in pain and I need it removed.  I should not have gone this long with the pain and suffering that I have endured!!!"  The health service request did not mention any change in symptoms.  Hulstein wrote in response that "You have an appointment scheduled with a provider for this."

On October 28, 2018, plaintiff submitted a health service request about hemorrhoids, writing that:

> First of all, I was charged $7.50 for having a Thrombosed external hemorrhoid which is the worst kind and the most painful and must be removed!!  You billed me this and told me on the 8th that a doctor's appointment was made!!!!  I have been in serious pain for months and you guys have allowed me to go through this pain and suffering and not treated this hemorrhoid for months.  Why am I still carrying this external thrombosed hemorrhoid??  Any medical book will tell you and show you that this is serious and must be removed.  What needs to happen to me to have this removed???  Sepsis which would kill me??

Hulstein responded the same day, stating "You have a provider appointment coming up." The October 28 health service request did not mention any change in symptoms.  No one had diagnosed a thrombosed hemorrhoid.

3. <u>November 2018 complaint to warden and subsequent treatment</u>

On November 5, plaintiff wrote Warden Lizzie Tegels about his hemorrhoid treatment.  On November 12, advanced care provider Dr. Lily Liu met with plaintiff, who reported he had had one to two bowel movements per day with rectal bleeding with almost

every bowel movement since February 2018.  Dr. Liu noted that plaintiff was "in no acute distress" and noted that he had a "moderate size, 5cm, flesh color external hemorrhoid."  She noted "no abscess, fistula, fissure or prolapsed rectal mucosa."  Dr. Liu wrote that plaintiff's rectal tone was normal and there was "no blood on digital exam."  She instructed plaintiff to keep his stool soft, avoid a high fiber diet and to refrain from straining while passing a bowel movement.  Dr. Liu ordered Colace, a medication used to treat constipation, several labs and a consultation with general surgery.

Maassen responded to plaintiff's letter to the warden on November 12.  She reminded plaintiff that nursing staff had assessed him and referred him to an advanced care provider who had ordered labs, and that he had a scheduled consult with general surgery.  Maassen did not learn about plaintiff's hemorrhoid problem until he sent a letter to the warden on November 5.  The health services unit did not hear anything else from plaintiff until he submitted health service requests in December 2018.

4. <u>December 2018 health service requests</u>

In a December 5, 2018 health service request, plaintiff wrote "I am still bleeding and I'm in pain everyday!  When is my surgery that was supposed to be scheduled???  I thought that was supposed to be considered an emergency considering the complications that happened while giving blood???  I am still losing blood!!  Every day."  Defendant Hulstein triaged the request and wrote back on the same day that "You have a consult coming up with an offsite surgeon. Your last labs came back Normal."  The request did not mention any

10

change in symptoms, and plaintiff's records did not show that the advanced care provider requested an urgent or emergency offsite appointment.

In a December 25, 2018 health service request, plaintiff wrote "I realize that you made an appointment for me for surgery but I am in pain everyday and bleeding everyday so is my surgery any time soon??? Jan, Feb, when?? thank you Merry Christmas!!" Defendant Pralle replied the next day, December 26, writing "Scheduled/confirmed" because she interpreted the request as one for information about when the surgery was scheduled and not a request for a nurse assessment or new treatment.  Corrections policy prohibits nurses from telling an inmate the date of his appointment.  This was the first time Pralle learned of plaintiff's complaint about his hemorrhoids.

5.  Plaintiff's offsite treatment

On December 28, 2018, plaintiff went to Black River Memorial Hospital for an offsite appointment for his hemorrhoids.  He reported that he had noticed "significant tissue prolapsing from his rectum" and "blood in the toilet" during the "last several months."  The physician wrote that "[t]he patient has a hard time describing the lesions, however, he states that they move in and out of the anus."  In the rectal examination section of the notes, the physician wrote that "[i]nspection was performed, which shows likely perianal skin tag.  No digital exam was done at this point."  In the assessment/plan section, the physician wrote the following:

> Perianal hemorrhoids verse [sic] rectal prolapse.  The patient was explained the nature of this disease, the risks, benefits, alternatives and complications.

The patient will consent to examination under anesthesia, possible hemorrhoidectomy. Risks and complications including but not limited to bleeding, infection, and incontinence were discussed. The patient will consent. The patient may have history and physical done at JCI. The patient will then present back to Black River Memorial Hospital for examination under anesthesia and as above.

Following a pre-surgery physical and lab work, plaintiff returned to Black River Memorial Hospital on January 18, 2019, for an hemorrhoidectomy (removal of his hemorrhoids). This surgical procedure could not be performed at Jackson Correctional Institution.

Plaintiff submitted his notice of claim about hemorrhoids on February 4, 2019.

OPINION

A. Eighth Amendment

The Eighth Amendment's prohibition on cruel and unusual punishment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,'" including "grossly inadequate medical care." Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). To prevail on a claim based on deficient medical care, the plaintiff must demonstrate two elements: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition. Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011).

Citing cases from the United States District Court for the District of Connecticut, defendants argue that plaintiff's hemorrhoids were not a serious medical condition. E.g., Green v. Shaw, 2019 WL 1427448, at *6 (D. Conn. Mar. 29, 2019) (joining majority of

courts in Second Circuit in declining to find that hemorrhoids, rectal bleeding or painful bowel movements constitute "serious medical need").  However, the Court of Appeals for the Seventh Circuit has held that "serious medical needs" are not only conditions that are life threatening or that carry risks of permanent, serious impairment if left untreated, but also those in which the withholding of medical care results in needless pain and suffering. Gutierrez v. Peters, 111 F.3d 1364, 1371 (7th Cir.1997).  According to the court of appeals, serious medical conditions include those which a physician has determined require treatment, or are conditions for which the need for treatment would be obvious to a layperson.  Pyles, 771 F.3d at 409.  See also Estelle v. Gamble, 429 U.S. 97, 104 (1976) (inmate's medical condition is serious when physician prescribes treatment to avert "unnecessary and wanton infliction of pain").  In this case, it is undisputed that plaintiff's hemorrhoids caused him pain and bleeding over several months for which he contacted health care providers and required treatment with hemorrhoid cream, stool softeners and eventually surgery.  Therefore, I conclude that a reasonable jury could find that plaintiff suffered from a serious medical condition under the circumstances present in this case. Troya v. Wilson, 807 Fed. Appx. 556, 558 (7th Cir. Mar. 20, 2020) (finding constipation following recovery for hemorrhoidectomy was serious medical need because physician recommended painkiller, stool softener, eating soft foods, drinking liquids and calling for help if needed); Wheeler v. Wexford Health Source Inc., 2014 WL 12704388, at *7 (S.D. Ill.  May 27, 2014) (plaintiff's testimony about thrombosed, golf-ball sized hemorrhoids that reaches 10 on pain scale is evidence of serious medical condition).

13

The second element of an Eighth Amendment medical care claim requires a showing of "deliberate indifference," which is a subjective standard.  Arnett, 658 F.3d at 751. Deliberate indifference means that the official was aware that the prisoner faced a substantial risk of serious harm but disregarded the risk by consciously failing to take reasonable measures to address it.  Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).  In cases in which a prisoner alleges that he received some treatment for his medical condition, but the treatment was inadequate, the relevant question is whether the medical provider's actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment."  Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261-62 (7th Cir. 1996).  In such cases, courts must defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the circumstances.  Pyles, 771 F.3d at 409.  A "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation."  Id.  But a medical provider may violate the Eighth Amendment if the provider prescribes a course of treatment without exercising medical judgment or that the providers knows will be ineffective.  Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 662-63 (7th Cir. 2016).

Plaintiff contends that defendants Maassen, Hulstein and Pralle acted with deliberate indifference to his hemorrhoids by making him wait months to see a doctor and not taking

14

reasonable measures to insure that he have his hemorrhoids removed earlier.  However, the undisputed facts do not support plaintiff's claims.

Although plaintiff complains that he had to wait several months to see a doctor and then to see a specialist for his hemorrhoids, no evidence shows that any of the nurse defendants caused that delay.  Miller v. Harbaugh, 698 F.3d 956, 962 (7th Cir. 2012) (prison officials not liable under Eighth Amendment if "remedial step was not within their power").  The undisputed facts show that plaintiff first sought treatment for hemorrhoids in February 2018, when he saw a nurse and then an advanced care provider, who recommended follow up within a week.  Plaintiff was not seen by health services staff and did not seek further assistance until October 2018, when he submitted additional health service requests regarding his treatment.  However, it is undisputed that none of the defendants knew about or were involved in treating his hemorrhoids until October 2018, at the earliest.  Therefore, defendants cannot be held liable for any delay in treatment that plaintiff may have experienced between February 8 and October 7, 2018.

Defendants also argue that they did not act with deliberate indifference to plaintiff's hemorrhoids after October 7, 2018.  I will address those arguments separately with respect to each defendant below.

1. Defendant Hulstein

The undisputed facts show that Hulstein first learned of plaintiff's problems with hemorrhoids when she received and triaged his October 7, 2018 health service request in

which he reported that he still had a painful hemorrhoid sticking out of his body that bled every time he went to the bathroom. She responded the same day, scheduling him for a visit with a nurse on the following day. Although plaintiff argues that Hulstein should have scheduled him to see an advanced care provider because he had had past problems with hemorrhoids for which an advanced care provider recommended follow-up if needed, the undisputed facts show that plaintiff did not request a follow-up appointment or otherwise complain about his hemorrhoids for eight months (February to March 2018). Under these circumstances, Hulstein's decision to make plaintiff an appointment with a nurse rather than an advanced care provider did not amount to deliberate indifference.

On October 8, 2018, Hulstein met with plaintiff, who reported having pain only when cleaning himself after a bowel movement. She responded by evaluating plaintiff's subjective symptoms and scheduling him to see an advanced care provider to determine an appropriate treatment. Plaintiff has not submitted evidence showing that Hulstein should have done anything different at that appointment. However, he submitted additional health service requests on October 9 and 28, 2018, stating that he had suffered too long with his hemorrhoid, which needed to be removed. Hulstein promptly responded to both requests, stating that plaintiff had an appointment scheduled with an advanced care provider. Although plaintiff did not see an advanced care provider until November 12, the undisputed facts show that nurses have no control over an advanced care provider's schedule, and an initial appointment can be moved for a variety of reasons, such as more urgent medical needs or the provider's availability.

16

In addition, plaintiff has not shown that he required urgent or emergency treatment for his hemorrhoids or that this fact would have been obvious to Hulstein. Plaintiff did not report any new or worsening symptoms. Apart from seeking the earlier removal of his hemorrhoid, plaintiff does not say what Hulstein should have done to help him, but it is undisputed that she did not have the authority to prescribe medication or order surgery. In addition, according to Maassen's uncontradicted opinion, over-the-counter pain medications are not typically provided for hemorrhoids, but they were available to plaintiff through the canteen. Under these circumstances, Hulstein's response to plaintiff's October 2018 health service requests did not amount to deliberate indifference.

In a December 5, 2018 health service request, plaintiff wrote "I am still bleeding and I'm in pain everyday! When is my surgery that was supposed to be scheduled??? I thought that was supposed to be considered an emergency considering the complications that happened while giving blood??? I am still losing blood!! Every day." Defendant Hulstein triaged the request and wrote back on the same day that "You have a consult coming up with an offsite surgeon. Your last labs came back Normal." A reasonable jury would not conclude that Hulstein acted with deliberate indifference by interpreting plaintiff's statements to be a request for information about the date of his surgical consultation and not a request for new treatment. Moreover, plaintiff has not submitted evidence showing that Hulstein should have done anything different in response to his request. The facts show that by that point, Hulstein had personally evaluated plaintiff, knew that plaintiff had seen an advanced care provider on November 12, and knew that plaintiff was scheduled to see an offsite

17

specialist on December 28.  (Corrections policy prohibited Hulstein from telling plaintiff the date of his appointment.)  Plaintiff's health service request did not mention any change in symptoms, and plaintiff's records did not show that the advanced care provider believed that plaintiff required urgent or emergency treatment.

In sum, because Hulstein's actions show that she exercised medical judgment in responding to plaintiff's concerns, they do not support a finding of deliberate indifference. Therefore, defendant Hulstein is entitled to summary judgment as to plaintiff's claims against her.

2.  Defendant Maassen

It is undisputed that Maassen did not receive or review any of plaintiff's health service requests and was not aware of plaintiff's problems with hemorrhoids until she reviewed and responded to his November 5, 2018 letter to the warden.  (Although plaintiff says that he wrote "Attn. Ms. Maassen" at the top of his October 9, 2018 health service request, it is undisputed that nursing staff triages all health services requests, that not all health service requests are forwarded to Maassen, even if they are addressed to her, and that none of plaintiff's health service requests were forwarded to Maassen.)  Maassen responded to plaintiff's letter to the warden on November 12, reminding plaintiff that nursing staff had assessed him in October and referred him to an advanced care provider, who saw him on November 12.  The health services unit did not hear anything else from plaintiff until December 2018, when he submitted health service requests asking about when he was

scheduled to see the specialist.  However, the undisputed facts show that none of those health service requests were forwarded to Maassen and that she had no further knowledge or involvement with respect to his treatment.

Accordingly, a reasonable jury would not find that Maassen acted with deliberate indifference to plaintiff's medical need.  She responded promptly to plaintiff's concerns as soon as she was aware of them.  Therefore, defendant Maassen is entitled to summary judgment as to plaintiff's claim against her.

3.  Defendant Pralle

It is undisputed that Pralle was not aware of plaintiff's problems with hemorrhoids until she reviewed and responded to his December 25, 2018 health service request about needing to see the specialist soon because he was in pain and bleeding.  She responded the next day, stating that he had an appointment scheduled.  Although Pralle knew that plaintiff's offsite appointment was only two days later, on December 28, corrections policy prohibited her from telling plaintiff the exact date of his appointment.  Given the wording of plaintiff's health service request, Pralle reasonably interpreted it as a request for information about the date of his surgical consultation and not a request for new treatment. At that time, she knew that plaintiff had been seen on November 12 and referred to a specialist, whom he would be seeing in two days.  Moreover, plaintiff has not argued or submitted evidence showing that Pralle should have done anything different in response to

his request.  Therefore, defendant Pralle is entitled to summary judgment as to plaintiff's claim against her.

## B.  Negligence

Defendants also move for summary judgment on plaintiff's negligence claims against them.  They argue that plaintiff cannot succeed on his claims because (1) he did not file his notice of claim under Wis. Stat. § 893.82 until more than 120 days after his first reported symptoms, making the notice untimely; and (2) he failed to disclose an expert to give an opinion about the appropriate standard of care.  Although it is not clear that defendants would prevail on their arguments, it is unnecessary to address them.

This court can exercise supplemental jurisdiction over plaintiff's negligence claims under 28 U.S.C. § 1367.  However, the general rule is that federal courts should relinquish jurisdiction over state law claims if all federal claims are resolved before trial.  28 U.S.C. § 1367(c)(3); Burritt v. Ditlefsen, 807 F.3d 239, 252 (7th Cir. 2015).  In this instance, I decline to exercise supplemental jurisdiction over plaintiff's negligence claims because I am granting summary judgment on all of the federal claims.  In addition, the parties have not argued the merits of plaintiff's negligence claims.  Plaintiff may refile his claims in state court, subject to the applicable Wisconsin statute of limitations.

## ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendants Tammy Maassen, Pauline Hulstein and Kristine Pralle, dkt. #22, is GRANTED in part and DENIED in part.  The motion is GRANTED with respect to plaintiff Dominic Allen King's Eighth Amendment claims against all defendants, and the motion is DENIED in all other respects.

2. Plaintiff's state law negligence claims are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

3. The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 22d day of October, 2020.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

21